IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JACQUES ROY**, <br> **ID # 44132-177**, <br> <br> Movant, <br> <br> v. <br> <br> **UNITED STATES OF AMERICA**, <br> <br> Respondent. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br> <br> <br> <br> Civil Action No. **3:22-CV-1057-L-BT** <br> Criminal Action No. 3:12-CR-54-L(1) |

## MEMORANDUM OPINION AND ORDER

Before the court is Movant Jacques Roy's ("Movant") Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion"), received on May 10, 2022 (Doc. 2). After careful consideration of the Motion and applicable law, the court **denies** the Motion and **dismisses with prejudice** this action.

**I.   Background**

Movant challenges his federal convictions and sentences in Cause No. 3:12-CR-54-L(1). The respondent is the United States of America ("Government").

**A.   Conviction and Sentencing**

After pleading not guilty and proceeding to a jury trial on a 17-count Superseding Indictment with three of his six co-defendants, Movant was found guilty of 12 of 13 counts charged in the Superseding Indictment. These counts consisted of one count of conspiracy to commit healthcare fraud ("Count One"); eight counts of healthcare fraud and aiding and abetting ("Count Two, Count Three, Count Four, Count Seven, Count Eight, Count Nine, Count Ten, and Count Eleven"); two counts of false statements relating to healthcare matters and aiding and abetting ("Counts Fifteen and Sixteen"); and one count of obstruction of justice and aiding and abetting

("Count Seventeen"). *See* Docs. 131, 801.[1] By judgment dated August 11, 2017, he was sentenced to a total aggregate sentence of 420 months' imprisonment, comprised of: 120 months as to each of Counts One, Two, and Three, to run consecutively to each other; 120 months as to each of Counts Four, Seven, Eight, Nine, Ten, and Eleven, to run concurrently with one another and with Counts One, Two, and Three; and 60 months as to each of Counts Fifteen, Sixteen, and Seventeen, to run concurrently with Count Four and Counts Seven through Eleven, and consecutively to Counts One through Three. *See* Doc. 997 at 1-2.[2] His sentence of imprisonment was to be followed by six years of supervised release. *See id.* at 3. He was also ordered to pay restitution, jointly and severally, with his co-defendants, in the amount of $268,147,699.15. *See id.* at 5. The judgment was affirmed on direct appeal. *See* Docs. 1147, 1149; *United States v. Veasey*, 843 F. App'x 555 (5th Cir. 2021). Movant did not file a petition for a writ of certiorari with the Supreme Court.

    **B.   Substantive Claims**

Movant's Motion asserts several bases of ineffective assistance of trial counsel, and two bases of prosecutorial misconduct. *See* No. 3:22-CV-1057-L-BT, Doc. 2 at 5-6. The Government filed a response on September 9, 2022. *See id.*, Doc. 12. Movant filed a reply on January 30, 2023, and a correction and supplements on February 13, 2023, March 6, 2023, and August 1, 2023, respectively. *See id.*, Docs. 24, 26-27, 29.

**II.   Scope of Relief Under § 2255**

After conviction and exhaustion or waiver of the right to direct appeal, the court presumes that a defendant has been fairly and finally convicted. *United States v. Cervantes*, 132 F.3d 1106,

---

[1] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:12-CR-54-L(1).

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc)). Post-conviction "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citation and internal quotation marks omitted); *see also United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) ("A defendant can challenge a final conviction, but only on issues of constitutional or jurisdictional magnitude.").

### III.   Discussion

#### A.   Ineffective Assistance of Counsel

In his first, second, and third grounds, Movant contends that his trial counsel rendered ineffective assistance. *See* No. 3:22-CV-1057-L-BT, Doc. 2 at 5.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (stating that the prejudice inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would reasonably likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

### 1. Trial Preparation and Trial

Movant contends that counsel was ineffective "due to lack of preparation for trial" because counsel: "i) miss[ed] the deadline for expert notice resulting in dismissal of defense expert testimony; ii) fail[ed] to identify crucial exculpatory evidence; iii) didn't review government's exhibits in a timely manner, missing the deadline for production of remedial summary exhibits[.]" No. 3:22-CV-1057-L-BT, Doc. 2 at 5; *see also id.*, Doc. 3 at 2-8. He also contends that counsel rendered ineffective assistance in connection with the investigation and defense of Count Seven and by failing to interview co-defendant Patricia Akamnonu ("P. Akamnonu") and call her as a witness at trial to respond to allegations pertaining to Count Seven and the conspiracy between Movant and home healthcare agency ("HHA") Ultimate Care Home Health Services, Inc. ("Ultimate"). *See id.*, Doc. 2 at 5; *id.*, Doc. 3 at 9-13, 17-19.

#### a. Expert Notice

Movant argues that his counsel was ineffective because he failed to timely file his expert witness designations with descriptions of the proposed experts' opinions and the bases of those

opinions by the court's deadline, resulting in the exclusion of expert testimony at trial from defense witness Dr. Gresham Bayne ("Dr. Bayne").[3] *See id.*, Doc. 3 at 3-7.

The record shows that counsel was required to provide expert disclosures for Dr. Bayne in compliance with Federal Rule of Criminal Procedure 16(b)(1)(C) and the January 29, 2016 deadline set forth in the Amended Scheduling Order entered in the underlying criminal case. *See* Doc. 616; Doc. 740 at 7-10. Counsel's expert designations of January 29, 2016 did not include a summary of Dr. Bayne's proposed expert opinions and the bases for them that complied with Rule 16(b)(1)(C); rather, the designations contained a one-paragraph summary stating, in relevant part, that "[i]t is anticipated that Doctor Bayne will testify to the conclusions of his review and analysis of a sampling of [Movant's] patient files and the objective facts certifying such patients for home health services." Doc. 661 at 2; *see also* Doc. 740 at 10. Counsel did not seek an extension of the deadline, and on February 25, 2016—nearly a month after the deadline and less than two weeks before the scheduled trial—counsel submitted a more detailed summary to the Government of Dr. Bayne's proposed opinions and the bases for them. *See* Doc. 716-1; Doc. 740 at 10. Dr. Bayne's February 25, 2016 expert witness report detailed that, "[b]ased upon [his] review of a statistically valid sample of 57 charts from [Movant's] group practice dating from 2004 to 2012," Dr. Bayne would provide his "expert opinions on the home health eligibility for the patients represented and [Movant's] practice habits to the extent the records allow." Doc. 716-1 at 9. Following a hearing, the court first precluded the defense from introducing witness testimony through Dr. Bayne (and others) "using 'other good acts' evidence that [Movant] acted legally in certifying patients who are *not* the basis for the offenses charged[.]" Doc. 740 at 5. The court then also excluded Dr.

---

[3] Movant's expert designations named seven other expert witnesses. *See* Doc. 661. In this habeas action, Movant does not assert any claims or allege any facts regarding the other seven designated experts. The court therefore limits its consideration of Movant's claim only as it pertains to Dr. Bayne.

**Memorandum Opinion and Order – Page 5**

Bayne's expert testimony based on the failure to make expert disclosures in accordance with Rule 16(b)(1)(C) by the deadline. *See id.* at 12.

Even if the court assumes, without deciding, that counsel rendered deficient performance in failing to properly comply with the expert designation deadline, *Strickland* also requires a showing of resulting prejudice, i.e., a reasonable probability that the result of the trial would have been different absent counsel's alleged deficiency. Movant provides no facts or evidence to show a reasonable probability that the result of the trial would have been different had counsel filed a timely expert designation for Dr. Bayne that complied with Rule 16(b)(1)(C), especially as Dr. Bayne's proposed testimony was first precluded by the court to the extent it presented "other good acts" evidence regarding patients who were not among those related to the charged offenses. *See id.* at 5.

To the extent Movant contends that Dr. Bayne "would have testified that in his expert opinion, the patients certified by [Movant] qualified for home health services and were homebound as a matter of fact according to the regulations . . .[,]" his claim also fails. No. 3:22-CV-1057-L-BT, Doc. 3 at 5. Dr. Bayne was not designated to provide such an expert opinion, as discussed, Movant provides no facts or evidence to show that Dr. Bayne would have been permitted to provide said opinion testimony, and he provides only conclusory and unsubstantiated statements to show that Dr. Bayne would have testified as alleged.[4] Further, even if Dr. Bayne had been

---

[4] Movant does not provide any facts or evidence beyond conjecture and conclusory assertions to show that Dr. Bayne reviewed the charts or records of any of the patients who were the basis for any of the charged offenses or what Dr. Bayne concluded from such a review, much less that such conclusions would have been favorable to the defense. Accordingly, to the extent he asserts that counsel was ineffective based on a lack preparation in connection with Dr. Bayne's proposed or intended testimony, his claim is unsupported by the record and does not warrant § 2255 relief. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition [ ], unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

permitted to and did testify as alleged, Movant's belief and supposition that such testimony would have resulted in a different outcome—particularly given the areas on which Dr. Bayne was permitted to and did testify at trial, that Movant's counsel expressly tied Dr. Bayne's trial testimony to the specific patients underlying the charged offenses to argue that those patients were properly designated as homebound, and the extent of the evidence of guilt presented at trial—is insufficient to satisfy his burden under the second prong of *Strickland*. *See Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (holding that prejudice under *Strickland* requires a "'substantial,' not just 'conceivable,' likelihood of a different result.") (citing *Harrington v. Richter,* 562 U.S. 86, 112 (2011)); *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) ("[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong.").

Because Movant has not satisfied his burden under the second prong of *Strickland*, his claim is denied.

### b. Exculpatory Evidence

Movant contends that counsel was ineffective "by not reviewing properly the discovery HHS's subpoena which would have revealed that half the patients at trial had been certified by other physicians; crucial exculpatory evidence for the jury[.]" No. 3:22-CV-1057-L-BT, Doc. 3 at 7; *see also id.*, Doc. 24 at 3. He also argues that counsel "failed as well to review in a timely manner government's exhibits" and "failed to recognize on time that the patients summary exhibits produced by the government were not proper summary, instead, representing an opinion by cherry-picking information supporting the government's position and suppressing crucial patients' medical history that would indicate the patients were homebound, showing the jury only what the prosecution wanted the jury to see." *Id.*, Doc. 3 at 7. He also complains that counsel failed to file proper "remedial summary exhibits" to be admitted into evidence and available during jury

deliberations. *Id.*, Doc. 3 at 7-8; *see also id.*, Doc. 24 at 4. In his reply, he further alleges in connection with Count Seven that counsel "did not find out that she [the patient underlying Count Seven] was covered by Medicare Advantage plan, so her billing was not obtained through the HSS subpoenas," and counsel did not notice "there was in the discovery a physician order for Home Health service for Count 7 from Dr. Oluwole and a 60-day summary reporting the patient's request to assign Dr. Oluwole as her PCP." *Id.*, Doc. 24 at 3.

On most of his claims, Movant either fails to provide evidence to support his allegations, fails to show what further investigation by counsel would have revealed and how it would have altered the outcome of the trial, or fails to explain how the alleged evidence was exculpatory beyond offering his general conclusory statements. His allegations are therefore insufficient to satisfy his burden to show deficient performance under the first prong of *Strickland*. *See, e.g.*, *Ross*, 694 F.2d at 1011; *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

In his reply, Movant also argues that his "monthly list of denials (cancellations) for home health" constituted "irrefutable exculpatory evidence" that "would have disproved the prosecution [sic] false assertion that [Movant] perpetrated Medicare fraud by exposing that [Movant] was denying home health service when the patients did not qualify, convincing the jury that [Movant] did not certify patients knowing they did not qualify and eliminating criminal intent." No. 3:22-CV-057-L-BT, Doc. 24 at 4; *see id.*, Doc. 25 at 10-14. The record establishes that Movant was precluded from presenting precisely such evidence "of legitimate, noncriminal conduct to rebut the inference of criminal conduct alleged in the Superseding Indictment or for purposes that are prohibited by [Federal Rules of Evidence] 405(a) or 404(b)." Doc. 740 at 5. Because Movant was

**Memorandum Opinion and Order – Page 8**

precluded from introducing or referring to such evidence, counsel was not deficient for failing to raise or present such evidence at trial. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) (holding that failing to make a frivolous argument does not render counsel's performance unreasonable); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

Even if the court assumes, without deciding, that counsel rendered deficient performance on the bases alleged by Movant, Movant fails to provide evidence demonstrating a reasonable probability that the result of the trial would have been different absent counsel's alleged deficiencies. His subjective beliefs and conclusory statements of resulting prejudice show no more than the specter of a different outcome given the totality of the evidence and testimony in the case, and they are insufficient to satisfy his burden under the second prong of *Strickland*. *See Cullen*, 563 U.S. at 189; *Crane*, 178 F.3d at 312. Movant has not satisfied his burden under *Strickland*, and his claims of ineffective assistance of counsel premised on alleged exculpatory evidence are denied.

    c. **Count Seven**

Movant also makes a host of assertions of ineffective assistance of counsel relating to his conviction on Count Seven. *See* No. 3:22-CV-1057-L-BT, Doc. 2 at 5; *id.*, Doc. 3 at 9-13; Doc. 24 at 4-9. He argues that counsel "provided ineffective assistance by failing to identify and expose that [Movant] was not involved in the certifications for Count 7 in 2007 and 2008 and that those certifications were the result of the fraud by [HHA] Ultimate in conspiracy with [co-defendant Teri] Sivils ["Sivils"], not [Movant]," and failing "to interview and distance [Movant] from Sivils' illegal activity." *Id.*, Doc. 3 at 9. He generally denies that he knew anything about the illegal 485 plan of care ("POC") certification for which he was convicted on Count Seven, arguing that Sivils

acted without his knowledge and was conspiring with HHA Ultimate when she signed his name to that POC, as well as others. He complains that counsel's failure to highlight and point out these factors to the jury in various ways amounted to ineffective assistance of counsel. *See generally id.*, Doc. 2 at 5; *id.*, Doc. 3 at 9-13; Doc. 24 at 4-9.

Here, the record shows that trial testimony established that Sivils signed Movant's name on the POC at issue, and that she and others at HHA Ultimate signed Movant's name on other POCs; it also shows that the medical records, data, and information on which the majority of Movant's allegations rely were introduced as evidence and available to the jury for deliberations. On this record, Movant's allegations fail to show a reasonable probability that the result of his trial would have been different had his counsel further highlighted, expounded on, or emphasized such evidence to the jury.[5] His unsubstantiated and conclusory allegations of resulting prejudice are insufficient to satisfy his burden under the second prong of *Strickland*. Because his allegations fail to demonstrate *Strickland* prejudice, the performance prong need not be addressed, and Movant's claims are denied. *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

In connection with Count Seven and Movant's conspiracy with HHA Ultimate, Movant also contends that counsel should have called P. Akamnonu, one of the owners of HHA Ultimate, as a witness at trial, and was ineffective for not doing so. *See* No. 3:22-CV-1057-L-BT, Doc. 3 at 12. According to Movant, "there is no doubt that [P. Akamnonu's] admitting to the jury that [HHA] Ultimate forged [Movant's] signature for Count 7 certification would have been decisive for the Jury [sic]. Implicitly, there is a reasonable probability that [P. Akamnonu's] testifying that [HHA]

---

[5] Movant argues that counsel was deficient for not identifying and demonstrating "for the jury that the same scenario for Count 6 was replicated for Count 7," he fails to support his claim with evidence in the record aside from the fact of his forged signature, which as the court has explained, was established by testimony at trial. No. 3:22-CV-1057-L-BT, Doc. 3 at 10. To the extent his claim is contingent on his presumption that the jury acquitted him on Count Six because his signature on the POC certification on that count had been forged without his involvement, rather than on other factors established at trial that were not applicable to Count Seven, he provides no facts and evidence to support such a presumption beyond his unsupported rendition of the evidence.

**Memorandum Opinion and Order – Page 10**

Ultimate forged [Movant's] signature for Count 7 certifications would have convinced the jury to acquit [Movant]." No. 3:22-CV-1057-L-BT, Doc. 24 at 9.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the [movant] must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*; *see also Gregory v. Thaler*, 601 F.3d 347, 352-53 (5th Cir. 2010).

Even if the court assumes that P. Akamnonu was available and would have testified as set forth in her affidavits submitted in this action, Movant fails to show resulting prejudice under *Strickland*. Movant's conclusory statements and adamant assertions ignore that, had P. Akamnonu testified at trial as set forth in her affidavits, she would have been subject to impeachment and cross-examination by the Government at trial, not to mention potentially exposed to charges of perjury, based on her testimony under oath before the court when she pled guilty in this case that the facts in her factual resume—to the extent they contradict and conflict with her subsequent affidavit testimony filed in this action—were true and correct. Movant also provides no facts or evidence, beyond blanket assertions unsupported by anything in the record, to demonstrate a reasonable probability that the jury would have weighed the credibility of P. Akamnonu's testimony more heavily than the conflicting testimony of other co-conspirators who did not testify contrary to sworn testimony given to this court, the testimony of multiple other witnesses, and the slew of other evidence of fraud and conspiracy presented during the trial such that the outcome of

Movant's trial would have been different. At best, Movant raises the mere possibility of a different outcome at trial had P. Akamnonu been called as a witness, which is insufficient to carry his burden under the second prong of *Strickland*. *See Cullen*, 563 U.S. at 189; *Crane*, 178 F.3d at 312. Accordingly, his claim of ineffective assistance of counsel based on counsel's failure to interview P. Akamnonu and call her at trial is denied.

### 2. Sentencing Proceedings

Movant contends that "in sentencing, counsel[] failed to demonstrate that large [sic] portion of the loss amount [Movant] was sentenced upon was not relevant to him and the information in the PSR was unreliable." No. 3:22-CV-1057-L-BT, Doc. 2 at 5.

In support of his claim, Movant alleges various deficiencies of counsel in failing to further challenge the loss amount at sentencing, all of which are premised on his denial of any involvement in and knowledge of the conduct of the HHAs with which he was convicted of conspiring. *See id.*, Doc. 3 at 13-17. Specifically, he characterizes the underlying criminal case as "a simple case of forgery" by HHA Ultimate and other HHAs, conducted without his involvement or knowledge, "which was the source of the real fraud and actual loss." *Id.*, Doc. 3 at 14. He faults counsel for not making this point at sentencing to prove that he "was sentenced on loss [sic] amount not relevant to his certifications." *Id.* Movant appears to be arguing that, for purposes of sentencing, 32 levels that were derived from the loss amount for which he was held accountable should not have applied to his base offense level; in other words, he seems to contend that there was no loss amount for which he was accountable.[6] *See id.*, Doc. 3 at 15; *see also* Doc. 856-1, ¶ 41.

---

[6] For purposes of sentencing, the United States Probation Office prepared a presentence investigation report ("PSR"). *See* Doc. 856-1. Movant's base offense level started at 6 under the sentencing guideline applicable to his offenses. *See id.*, ¶ 41. Based on the loss amount for which he was held accountable, 28 levels applied to the base offense level, and an additional 4 levels applied because the offense involved a government healthcare program and because of the loss amount involved; another 2 levels applied because the offense involved sophisticated means. *See id.* His base offense level was therefore calculated at 40, before additional adjustments. *See id.*

**Memorandum Opinion and Order – Page 12**

The record shows that counsel objected to the loss amount on both legal and factual grounds, and argued that Movant should be accountable for a loss amount of $2,881,135.64. *See* Docs. 886-88, 913-14. The court considered and rejected the arguments of Movant's counsel at the sentencing hearing and found that Movant was properly held accountable for an intended loss amount of $373,331,726.10, which was based on amounts billed or submitted to Medicare during the course of the conspiracy for beneficiaries certified by Movant for home health care services. *See* Doc. 856-1, ¶¶ 33-34; Doc. 1094 at 9-20. The Fifth Circuit held that Movant's arguments on appeal challenging the loss amount were without merit. *See Veasey*, 843 F. App'x at 570.

Here, Movant's arguments for relief are predicated on his denial of the evidence and findings in the record. In holding that Movant's challenges to the loss amount on appeal were without merit, the Fifth Circuit specifically determined that the record did not support Movant's contentions that, *inter alia*, he was unaware of what the HHAs were doing, the evidence at trial was false, and HHA Ultimate's certifications were not relevant to him.[7] *See id.* Because the Fifth Circuit has already rejected Movant's contentions that the loss amount was improper on the basis of alleged lack of knowledge, false trial evidence, and irrelevancy to him of the HHAs' certifications, especially those of HHA Ultimate, he has not identified a meritorious basis on which counsel should have further challenged the loss amount at sentencing. As discussed, counsel is not deficient for failing to raise a meritless argument. *See Preston*, 209 F.3d at 787; *Sones*, 61 F.3d at 415 n.5.

---

[7] The affidavit testimony of P. Akamnonu also does not provide credible evidence establishing that Movant was unaware of HHA Ultimate's actions regarding certifications. To the extent she purports to place blame on her co-defendant husband and Sivils for the certifications at HHA Ultimate, the testimony she offers in support is either lacking in personal knowledge or involves inadmissible hearsay. The remainder of her testimony goes only to the credibility of witnesses and does not exculpate Movant.

**Memorandum Opinion and Order – Page 13**

Movant also complains that counsel "failed to specifically object to the PSR's determination that [Movant] performed over 11,000 patient certifications[.]" No. 3:22-CV-1057-L-BT, Doc. 3 at 14. He argues that this determination "was false as a matter of fact, prove[d] by Medicare data for [Movant] and Medistat billing summary from Defense [sic] own worksheet for GX 345, which reveals a total of only 9,607 patient certifications[.]" *Id.*; *see also id.*, Doc. 4 at 40; Doc. 886-1. The document on which Movant relies "summarizes Medicare claims data for all patients for which a 485 or 'Plan of Care' was certified under [Movant's] provider pin # [ ]," and includes—in addition to the 9,607 number cited by Movant—69,126 recertifications and 3,154 care plan oversights; it does not specify how many unique beneficiaries there were among the total 81,887 claims certified under Movant's pin number. Doc. 886-2 at 1; *see also* Doc. 886-1. For purposes of sentencing, the PSR stated that Movant and his company "certified more 11,000 unique Medicare beneficiaries for home healthcare services. . . ." Doc. 856-1, ¶ 33. Movant's attempt to argue that the quantity of over 11,000 beneficiaries referenced in the PSR was false is unsupported by the record and without merit. Because counsel is not deficient for failing to raise a meritless argument, this claim also fails to satisfy the first prong of *Strickland*. *See Preston*, 209 F.3d at 787; *Sones*, 61 F.3d at 415 n.5.

Movant also fails to show resulting prejudice under *Strickland*. To show prejudice in the sentencing context, a movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

Movant fails to show a reasonable probability that had counsel raised the arguments alleged, Movant's loss amount would have been lower, and the court would have imposed a

sentence that was less harsh. For example, Movant fails to provide facts or evidence—aside from appearing to generally contend that the loss amount was $0—to show the amount by which the loss amount would have been reduced but for counsel's alleged deficiency, or that the reduced amount would have affected the applicable sentencing guidelines range. Moreover, the court detailed its consideration of the circumstances of the case and the 18 U.S.C. § 3553(a) sentencing factors in determining an appropriate sentence, and it expressly advised that it would impose the same sentence of 420 months' imprisonment even if one or several of Movant's convictions were overturned or vacated on appeal. *See* Doc. 1094 at 119-30. On this record, Movant fails to provide any facts or evidence to show a reasonable probability that the court would have imposed a lower sentence if Movant's loss amount were reduced. His conclusory and unsupported allegations of prejudice, and his attempts to expound on, explain, and dispute the testimony and evidence presented at trial, are insufficient to satisfy his burden under the second prong of *Strickland*. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Miller*, 200 F.3d at 282; *Ross*, 694 F.2d at 1011.

Movant has failed to satisfy both *Strickland* prongs to demonstrate that his counsel was ineffective for failing to further challenge the loss amount on the bases alleged. Accordingly, he is not entitled to § 2255 relief on these claims, and they are denied.

### B.  Prosecutorial Misconduct

In his fourth ground, Movant contends that the Government violated his due process rights "by employing false evidence to obtain convictions[,]" and "by misrepresenting and misstating the evidence obtaining the convictions on inadmissible basis." No. 3:22-CV-1057-L-BT, Doc. 2 at 6.

He admits that "Ground 4 are [sic] constitutional violation issues that were raised and decided against Petitioner on direct appeal." *Id.*, Doc. 3 at 20.

Defendants who collaterally attack their federal convictions may not raise grounds previously raised on direct appeal. *See United States v. Rocha*, 109 F.3d 225, 229-30 (5th Cir. 1997). "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)). To the extent Movant contends that his prosecutorial misconduct claims are excepted from this rule because other grounds for relief he asserts in this habeas proceeding and the affidavit testimony of P. Akamnonu "establish that the denial of the constitutional claims were [sic] clearly erroneous and worked manifest injustice requiring the Court to entertain the claims on the merits," his argument fails. No. 3:22-CV-1057-L-BT, Doc. 3 at 22. His other habeas grounds fail for the reasons already discussed, and P. Akamnonu's affidavit testimony does not establish that the Fifth Circuit's decision was "clearly erroneous" and "worked manifest injustice." *Id.* At best, P. Akamnonu's affidavit merely supports points and theories made at trial by the defense, while simultaneously conflicting with her own affirmations and statements made under oath when she pled guilty. Accordingly, because Movant's claims were considered and rejected on appeal, and he fails to show that any exception applies in this habeas proceeding to warrant review on the merits, he is not entitled to habeas relief on this ground, and his claims of prosecutorial misconduct are denied.[8]

---

[8] Because these claims were raised by Movant *pro se* on direct appeal, he fails to show that they were procedurally defaulted such that a showing of cause and prejudice for the default or the actual-innocence gateway exception to a procedural default would apply here.

**Memorandum Opinion and Order – Page 16**

### C. Evidentiary Hearing

Movant seeks an evidentiary hearing in this case. *See* No. 3:22-CV-1057-L-BT, Doc. 3 at 1; *id.*, Doc. 24 at 11. No evidentiary hearing under § 2255 is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) ("A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'"); *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981). Movant's claims lack merit for the reasons supported by the record and stated above. He therefore is not entitled to an evidentiary hearing on any of his claims.

## IV. Conclusion

The court **denies** Movant's Motion, received on May 10, 2022 (Doc. 2), and **dismisses with prejudice** this action for the reasons herein stated.

**It is so ordered** this 27th day of August, 2024.

Sam A. Lindsay
United States District Judge